# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| ROBERT A. HORNE, ERIC RICHARDS, and VICTOR CARRELL, §§§§ Plaintiffs, | § § § § § § § § § § | |
| v. | | Case No. 4:19-CV-405-KPJ |
| TEXAS DEPARTMENT OF TRANSPORTATION Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Texas Department of Transportation's ("TxDOT") Motion to Sever (the "Motion") (Dkt. 5). Plaintiffs Robert Horne, Eric Richards, and Victor Carrell (collectively "Plaintiffs" and individually "Horne," "Richards," and "Carrell") filed a response opposing severance (Dkt. 6). The parties discussed the Motion with the Court during the Management Conference on October 22, 2019. *See* Dkt. 19. Upon consideration, the Court finds Defendant's Motion (Dkt. 5) is **DENIED**.

### I.  BACKGROUND

Plaintiffs were longtime employees of TxDOT and worked together at the Sulphur Springs Yard ("the Yard"), a TxDOT facility, between 2015 and February 2017.[1] *See* Dkt. 1 at 5–6. During this time, Horne, a Native American, was allegedly subjected to racially-based discriminatory and disparate treatment by the Yard's supervisor, Clint Traylor ("Traylor"), who was transferred by TxDOT to the Yard sometime in 2015. *See id.* at 6, 8. Horne was the only Native American employed at the Yard during Traylor's tenure. *See id.* at 2. Horne repeatedly complained that

---

[1] The following facts are recited as set forth in Plaintiffs' Complaint (Dkt. 1), and therefore should not be read as findings of fact by the Court, but rather a baseline for discussion and consideration of the Motion.

Traylor's racially-motivated disparate treatment of him and TxDOT's responses to Traylor's actions violated Title VII of the Civil Rights Act of 1964 and 1994, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *See id.* at 1, 3, 4. Richards and Carrell also repeatedly complained about the treatment of Horne.[2] *See id.* at 6. All three Plaintiffs allege these complaints were protected conduct under Title VII, as Plaintiffs were "opposing the racially disparate mistreatment of Horne by Traylor and others at the Sulphur Springs Yard." *See* Dkt. 1 at 1, 10. All three Plaintiffs' complaints began in 2015, and continued through February 2017. *See id.* at 6.

On December 16, 2016, TxDOT management staff Chad Ingram ("Ingram"), Tommy Henderson ("Henderson"), and Daniel Taylor ("Taylor") met individually with each Plaintiff. *See* Dkt. 1 at 10. Horne was issued a twelve-month probation and a five-day unpaid suspension as disciplinary action. *See id.* at 11. Carrell and Richards were each told TxDOT management had heard they were unhappy working at the Yard and were offered the option to transfer to another facility. *See id.* at 10–11. Carrell and Richards were further told they were not being accused of misconduct or poor performance. *See id.* Carrell and Richards each told management they did not wish to transfer, and management assured Carrell and Richards that they would not be reassigned out of the Yard. *See id.*

After the December 16 meetings, Carroll and Richards continued to complain about Horne's treatment to TxDOT officials, including Henderson and TxDOT Human Resources employee Catherine Hosteler. *See* Dkt. 1 at 12–13.

---

[2] Specifically, Plaintiffs claim they each "complained multiple times to TxDOT management and HR representatives in 2016, that Traylor and other employees were harassing Horne when compared with how Traylor treated other employees." Dkt. 1 at 8. Plaintiffs also complained about "anything and everything they could think of regarding what was wrong with the Sulphur Springs Yard," including "the disparate treatment that Horne had been experiencing for approximately a year and a half from Traylor and others." Dkt. 1 at 10.

On February 17, 2017, TxDOT transferred each Plaintiff to a different TxDOT facility: Horne to the Cooper Yard, Richards to the Emory Yard, and Carroll to the Mount Vernon Yard. *See* Dkt. 4 at 5. The transfers were issued in person by Henderson and Taylor. *See* Dkt. 1 at 13. Plaintiffs allege the transfers were made in retaliation for their protected complaints. *See id*. at 4. Soon after the transfers, Horne retired early. *See id*. at 14. Carrell and Richards remained employed at the TxDOT facilities to which they were transferred. *See id*. at 15.

In September 2017, Plaintiffs filed complaints with the Equal Employment Opportunity Commission ("EEOC") against TxDOT, in which Horne alleged racial discrimination, age discrimination, and retaliation, and Richards and Carrell alleged age discrimination and retaliation in violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act. *See* Dkt. 1 at 21–23. After Plaintiffs received their right to sue letters from the EEOC, they filed the present suit on June 30, 2019. *See* Dkt. 1, Exhibit A. All three Plaintiffs seek back pay and lost retirement benefits, among other damages. *See* Dkt. 1 at 17.

TxDOT filed the Motion on grounds of misjoinder, seeking to sever Plaintiffs' claims prior to the initial mandatory disclosure deadline of August 22, 2019. *See* Dkt. 8 at 1–2. As the initial mandatory disclosure deadline passed before the case was transferred to the undersigned, the Court allowed the parties to address the Motion at the Management Conference on October 22, 2019. *See* Dkt. 16.

## II.  LEGAL STANDARD

"Under Federal Rule of Civil Procedure 21, trial courts are afforded broad discretion to 'sever any claim against a party.'" *Jones v. Dematic Corp.*, No. 3:13-cv-1334-O, 2013 WL 12129709, at *1 (N.D. Tex. Nov. 8, 2013) (citing FED. R. CIV. P. 21; *Reid v. Gen. Motors Corp.*, 240 F.R.D. 260, 263 (E.D. Tex. Jan.16, 2007)). Rule 20 sets forth a two-prong test, allowing

joinder of parties when: (1) their claims arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there is at least one common question of law or fact linking all the claims. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010). Misjoinder of parties is not a ground for dismissing an action, but the Court may add or drop a party. FED. R. CIV. P. 21.

Rule 21 of the Federal Rules of Civil Procedure establishes that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party," and "[t]he court may sever any claim against a party." FED. R. CIV. P. 21. Under Rule 21, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chems.,* 67 F.3d 571, 574 (5th Cir. 1995). Trial courts have broad discretion to sever issues to be tried before it. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). However, courts will refuse to sever claims if "the court believes that it only will result in delay, inconvenience, or added expense." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014).

"Our district has maintained that Rule 21 'should be read in conjunction with Rules 18, 19 and 20,' because Rule 21 contains no standards governing its operation, but is invoked when violation of another rule occurs." *Texas Farmers Insurance Company v. Louisiana-Pacific Corp.*, 321 F.R.D. 561, 563 (E.D. Tex. 2017) (citing *Americans for Fair Patent Use, LLC v. Sprint Nextel Corp.*, No. 2:10-CV-237-TJW, 2011 WL 98279, at *2 (E.D. Tex. Jan. 12, 2011)). And the Fifth Circuit has held that "district courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiff's claims." *Acevedo*, 600 F.3d at 522. Therefore, "the Court finds it appropriate to utilize Rule 20 cases in determining whether to sever properly joined claims to the

4

extent they weigh on fairness, judicial economy, and prejudice." *Texas Farmers Insurance Company*, 321 F.R.D. at 563.

### III. ANALYSIS

TxDOT argues Plaintiffs' claims should be severed because: (1) no common question of fact or law exists between all Plaintiffs; and (2) allowing Plaintiffs to continue in a single proceeding will result in jury confusion and prejudice to TxDOT. *See* Dkt. 5 at 2, 4. Plaintiffs respond that their claims are properly joined and should not be severed because: (1) Plaintiffs' claims arise from common questions of law and fact; (2) the chance for jury confusion or prejudice is nominal; (3) judicial economy is served by allowing Plaintiffs' claims to proceed together, because the claims "rely on many of the same witnesses and actions which occurred on the same dates and in the same places by the same decision makers;" and (4) severance would chill Plaintiffs' claims. *See* Dkt. 6 at 3, 6, 8, 9. Accordingly, the Court will analyze whether joinder is proper under Rule 20, and whether the claims should be severed due to jury confusion or prejudice, pursuant to Rule 21. *See* FED. R. CIV. P. 20, 21.

#### A. PROPER JOINDER OF MULTIPLE PLAINTIFFS UNDER RULE 20

The Court first turns to the two-pronged test for proper joinder of multiple plaintiffs under Rule 20. *See Acevedo*, 600 F.3d at 521. Plaintiffs may be joined in one action when: (1) there exists any question of law or fact common to all plaintiffs; and (2) Plaintiffs assert any right to relief jointly or severally, or alternatively arising out of the same transaction, occurrence, or series of transactions or occurrences. *See* FED. R. CIV. P. 20(a)(1).

1. **<u>Common Question of law or fact</u>**

TxDOT argues there is no question of law or fact that is common to all of Plaintiffs' claims, and thus the claims should be severed. *See* Dkt. 5 at 2. Plaintiffs contend their claims arise from common questions of law and fact, and are thus, properly joined. *See* Dkt. 6 at 3.

Rule 20's "common question" prong is satisfied so long as Plaintiffs establish "at least one common question of law or fact linking all claims." *See Acevedo*, 600 F.3d at 521. A common question of law and fact exists when each of Plaintiff's claims are based on violation of the same law and share a "common nucleus" of underlying facts. *See Wagoneka,* 2019 WL 4052484, at *5. A common question of fact exists when the facts concerning each of Plaintiff's claims are "inextricably woven together" with the facts concerning the other Plaintiffs' claims. *See Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1100 (5th Cir. 1973).

TxDOT argues there is no question of law or fact common to all Plaintiffs because the pleadings establish no perfect factual overlap as between any Plaintiff on any common legal claim. *See* Dkt. 5 at 3–4. TxDOT notes that only Horne asserts a racial discrimination claim and argues that Plaintiffs' retaliation claims involve transfers to different work locations, under different circumstances, resulting in unique legal claims against TxDOT. *See id*. at 3. Further, Horne seeks damages for "constructive dismissal" while Carrell and Richards remain employed by TxDOT. *See id*.

Plaintiffs respond by pointing to the common questions of law and fact underlying their claims, such as Traylor's alleged racial discrimination of Horne, which allegedly led to all three Plaintiffs' complaints. *See* Dkt. 6 at 1. Plaintiffs further allege TxDOT retaliated against all three Plaintiffs through involuntary transfers away from the Sulphur Springs Yard on the same day. *See id*.

The Court finds Plaintiffs have shown the existence of more than one specific common question of law and fact. All three Plaintiffs' claims turn on whether TxDOT's involuntary transfer of Plaintiffs on February 17, 2017, was in retaliation for Plaintiffs' complaints, in violation of Title VII. *See* Dkt.1 at 1, 7. Additionally, common questions of fact exist regarding Horne's discrimination and retaliation claims, and the retaliation claims of Richards and Carrell, since the facts of Traylor's alleged discrimination against Horne and all three Plaintiffs' alleged complaints to TxDOT about the alleged discriminatory treatment of Horne are "inextricably woven together" and share a common nucleus of law and fact. *Nor-Tex Agencies*, 482 F.2d at 1100; *see also Wagoneka,* 2019 WL 4052484, at *5. Only by considering facts related to the alleged discrimination can a jury determine whether Plaintiffs' complaints were in fact protected conduct under Title VII.

Despite TxDOT's argument to the contrary, relatively minor factual differences between Plaintiffs' claims do not require severance when Plaintiffs' claims otherwise share a common nucleus of law and fact. *See, e.g., Nor-Tex Agencies*, 482 F.2d at 1100; *King v. Cole's Poultry, LLC*, No. 1-14-cv-00088-MPM-DAS, 2016 WL 7227915, at *2–4 (N.D. Miss. Dec. 13, 2016) (denying severance based on minor differences in claimed damages); *Lee v. TriCentury Corp.*, No. 1:08-CV-719, 2011 WL 13196283, at *1 (E.D. Tex. Mar. 29, 2011).

The Court finds at least one common question of law and fact between all Plaintiffs. Plaintiffs' allegations therefore satisfy the "common question" prong of Rule 20. Accordingly, the Court next turns to the "arising out of" prong.

### 2. Claims arising out of the same transaction, occurrence, or series of transactions or occurrences

Plaintiffs do not seek relief jointly or severally, but argue their claims arise out of the same transaction, occurrence, or series of transactions or occurrences ("[E]ach Plaintiff's retaliation

claim stemmed from a set of meetings with the same TxDOT representatives on the same date, December 16, 2016; and retaliatory acts which were transacted on the same date, February 17, 2017, by the same TxDOT representatives and decision makers."). *See* Dkt. 6 at 4. TxDOT does not directly dispute that Plaintiffs' claims arise out of the same transaction, occurrence, or series of transactions or occurrences. *See* Dkt. 5 at 2 (stating severance is proper because "no common issue of law or fact exists between all Plaintiffs," but silent as to the "arising out of" prong).

The "arising out of the same transaction, occurrence, or series of transactions or occurrences" requirement is satisfied if there is "some connection or logical relationship between the various transactions or occurrences" giving rise to Plaintiffs' claims. *Jones v. Wal-Mart Stores, Inc.*, No. 1:05-CV-121, 2006 WL 8441384, at *1 (E.D. Tex. Feb. 6, 2006) (citations omitted); *see also Americans for Fair Patent Use, LLC v. Sprint Nextel Corp.*, No. 2:10-CV-237, 2011 WL 98279, at *3 (E.D. Tex. Jan. 12, 2011). A logical relationship exists if there is some nucleus of operative facts or law shared by the transactions. *Americans for Fair Patent Use,* 2011 WL 98279, at *3.

In an employment context, a series of transactions or occurrences is logically connected when the transactions or occurrences take place in the same workplace location, during the same timeframe, under the same supervisory regime. *See Acevedo*, 600 F.3d at 522; *Jones v. Wal-Mart,* 2006 WL 8441384, at *2; *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1064 (S.D. Tex. 1996). Plaintiffs' retaliation claims arise from a series of meetings with the same TxDOT staff at the Sulphur Springs Yard on the same dates. *See* Dkt. 6 at 4. Additionally, Horne's discrimination claim arises from conduct alleged to have occurred in the same workplace with the same TxDOT staff during the same two-year timeframe, and Plaintiffs' complaints—which allegedly resulted in the retaliatory actions—were based upon this discriminatory conduct. *See* Dkt. 1 at 3. Horne's

8

discrimination claim and Plaintiffs' retaliation claims arise from events taking place at the Sulphur Springs Yard between 2015, and 2017, under the supervisory regime of Traylor. *See id*. at 6.

For the above reasons, the Court finds Plaintiffs' allegations establish a "logical connection" between the events giving rise to Plaintiffs' retaliation and discrimination complaints, and thus satisfy the "arising out of" prong of Rule 20. As both prongs of the Rule 20 analysis are satisfied, the Court concludes joinder was proper. The Court therefore proceeds to analyze whether Plaintiffs' claims should nevertheless be severed to avoid prejudice to TxDOT.

### B. PREJUDICE UNDER RULE 21

TxDOT contends that allowing Plaintiffs to continue in a single proceeding will result in jury confusion and prejudice to TxDOT. *See* Dkt. 5 at 4. Plaintiffs argue the chance for jury confusion or prejudice is nominal and judicial economy is served by allowing the claims to proceed together. *See* Dkt. 6 at 6–9.

Under the Federal Rules of Civil Procedure, "joinder . . . is strongly encouraged" to serve judicial economy. *See Acevedo*, 600 F.3d at 521. However, Rule 21 allows a district court discretion to sever a properly joined action when proceeding jointly might cause prejudice or delay, or undermine "safeguarding principles of fundamental fairness." *See id.*

TxDOT argues jury confusion is likely as Plaintiffs' claims are "highly individualized." *See* Dkt. 5 at 6. Additionally, TxDOT contends allowing Horne's claim of racial discrimination to be presented jointly with Plaintiffs' retaliation claims will prejudice TxDOT since the jury could confuse the claims and the evidence admissible as to each claim, even with limiting instructions. *See id*. TxDOT further maintains "commingling" the three Plaintiffs' claims in one suit will complicate discovery and motion practice, making the litigation process "unduly burdensome for all parties." *See id*.

9

Plaintiffs contend the chance for jury confusion or prejudice in this case is "nominal at best" because the number of Plaintiffs and claims is manageable and Plaintiffs' claims share the same legal standard and factual basis. *See* Dkt. 6 at 6–7. Additionally, all three Plaintiffs intend to call the same witnesses and present much of the same evidence, so judicial economy is served by trying their claims together. *See id.* at 8–9.

While TxDOT heavily relies on *Henderson v. AT&T Corp.*, *Henderson* is factually distinguishable from the present suit. *See* Dkt. 5 at 4–6; *see* 918 F. Supp. at 1061. In *Henderson*, five former employees, residents of four states, brought a total of twenty federal discrimination and state law claims against their employer. *See Henderson*, 918 F. Supp. at 1061. The plaintiffs' claims were "highly individualized." *Id.* Moreover, the plaintiffs identified more than two-hundred potential witnesses and "very few of these potential witnesses appear[ed] on all [plaintiffs'] disclosure lists." *Id.* Under these circumstances, the *Henderson* court concluded the employer would be unduly prejudiced by a joint trial of all five plaintiffs' claims and granted severance as to three of the five plaintiffs. *Id.* at 1062. Two considerations were key to the *Henderson*'s court's decision to sever in part: (1) jury confusion due to the difficulty of a jury keeping separate "more than twenty claims of five plaintiffs;" and (2) prejudice against the employer because of the sheer number of witnesses expected to testify about the employer's allegedly discriminatory conduct. *See id.* at 1063–64.

Additionally, while the *Henderson* court granted severance as to the three geographically-diverse plaintiffs who had worked in different offices under different direct supervisors and shared only an indirect supervisory group, it denied severance as to the two plaintiffs who worked in the same office, where there was substantial overlap in expected witnesses. *See Henderson*, 918 F. Supp. at 1064–65; *see also Acevedo*, 600 F.3d at 518 (denying severance as to plaintiffs who

worked at the same store). Similarly, Plaintiffs in the present case worked at the same TxDOT facility for the same TxDOT staff during the same time period, and thus, expect to rely upon the same or similar witnesses and evidence. *See* Dkt. 1 at 2–3; Dkt. 6 at 8–9.

When it is likely there will be a number of witnesses in common amongst all plaintiffs and judicial economy would be facilitated by not severing the claims, severance should be denied. *See Taylor v. Turner Industries Group, LLC*, 2:11-CV-57, 2012 WL 12895343, at *3 (E.D. Tex. Mar. 16, 2012). Additionally, if conducting separate trials for each plaintiff would likely involve the testimony of many of the same witnesses and the presentation of a significant amount of duplicative evidence, it is unnecessarily burdensome to hold multiple trials. *See Jones v. Wal-Mart*, 2006 WL 8441384, at *2. Such repetitious trials are unnecessarily burdensome on the Court, plaintiffs and their counsel, and private individuals who would be called to offer substantially identical testimony on multiple occasions. *See id.*

At this time, the Court finds Plaintiffs' claims are not so numerous or diverse as to cause jury confusion, as three Plaintiffs allege a total of four claims. *See* Dkt. 1 at 1. Only two types of claims are involved: race discrimination and retaliation, both under Title VII. *See id.* Plaintiffs allege common facts and note their intention to rely upon "the same or similar evidence" and "the same witnesses." *See* Dkt. 6 at 9. The evidence does not indicate Plaintiffs' witnesses are likely to be so numerous as to create "a great danger that the jury will find [TxDOT] liable based on the sheer number of witnesses testifying about its purported wrongdoing." *See Henderson,* 918 F. Supp. at 1063. Therefore, Plaintiffs' allegations are sufficient to show that denying severance in this instance facilitates judicial economy. *See Taylor*, 2012 WL 12895343, at *3.

Finally, while TxDOT argues limiting instructions will not sufficiently prevent prejudice in this case, the Court does not find limiting instructions will be insufficient under the

circumstances currently presented. TxDOT does not advance specific reasons as to why limiting instructions cannot be effective here. *See* Dkt. 5 at 6 (offering the merely conclusory statement that "the jury could confuse the evidence and claims, even with limiting instructions, because evidence that might be admissible for one Plaintiffs' claims might not be admissible for another's"). Absent specific reasons otherwise, the Court concludes "any prejudice that [TxDOT] might potentially face due to joinder of Plaintiffs' claims could be prevented by appropriately tailored, limiting instructions to the jury." *Jones v. Wal-Mart*, 2006 WL 8441384, at *2; *see also Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004) (holding that limiting instructions minimize the dangers of undue prejudice).

As explained above, the Court concludes severance is not required at this time to prevent jury confusion and prejudice to TxDOT. Only three Plaintiffs and two different types of claims are present in this case, so the present risk of jury confusion is minimal. As Plaintiffs' claims are factually intertwined and there will be substantial overlap in witnesses, trying Plaintiffs' claims together promotes judicial economy. Further, any prejudice to TxDOT can be managed by appropriate limiting instructions. Given the Rules' preference for joinder when joinder serves judicial efficiency without undermining the fundamental fairness of the proceedings, the Court declines to sever Plaintiffs' properly joined claims at this time.

## IV. CONCLUSION

Based on the foregoing, the Motion to Sever (Dkt. 5) is hereby **DENIED**. As discussed at the Management Conference on October 22, 2019, the Court will allow TxDOT to raise the issue of severance for trial purposes, if necessary, at a time closer to trial. *See* Dkt. 19.

**So ORDERED and SIGNED this 28th day of October, 2019.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE