THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ROBERT A. HORNE, | § | |
| ERIC RICHARDS, and | § | |
| VICTOR CARRELL, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 4:19-CV-405-KPJ |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| TRANSPORTATION | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Texas Department of Transportation's ("TxDOT")

Motion for Dismissal Under Federal Rule 12(b)(6) (the "Motion") (Dkt. 37). Plaintiffs Robert A.

Horne, Eric Richards, and Victor Carrell (collectively, "Plaintiffs") filed a response (Dkt. 43), and

TxDOT filed a reply (Dkt. 48). Upon careful consideration of the pleadings and relevant law, the

Court finds the Motion (Dkt. 37) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**.

## I.    BACKGROUND

Plaintiffs Robert A. Horne ("Horne"), Eric Richards ("Richards"), and Victor Carrell

("Carrell") each worked for TxDOT for over ten years at TxDOT's Sulphur Springs Yard. *See*

Dkt. 31 at 2. In June 2015, Clint Traylor ("Traylor") became the Maintenance Supervisor at

TxDOT's Sulphur Springs Yard, and thus, became Plaintiffs' supervisor. *See id*. at 3. Plaintiffs

allege that Traylor subjected Horne to "racially disparate treatment and harassment on a regular

basis." *Id*. Plaintiffs further allege that Horne, Richards, and Carrell complained to various TxDOT

representatives on multiple occasions between 2015 and 2017, regarding Traylor's treatment of

Horne. *See id*. Plaintiffs allege these complaints, and Traylor's discriminatory treatment of Horne,

resulted in pretextual disciplinary actions against Plaintiffs, culminating in TxDOT placing Horne

on probation and issuing each Plaintiff an involuntary transfer away from TxDOT's Sulphur Springs Yard. *See id.* at 4–5.

On September 19, 2017, Plaintiffs' counsel filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on behalf of Plaintiffs against TxDOT. *See* Dkt. 1 at 21–23. In his EEOC Charge, Horne stated that his discrimination claims were based on race, age, and retaliation. *See id.* at 21. In his factual statement, Horne described the alleged conduct he believed violated Title VII in relevant part:

> I was the only Native American working at TxDOT's Sulphur Springs Yard. Shortly after Clint Traylor became the Maintenance Supervisor in 2015, Mr. Traylor began to treat me differently than all of the other employees subjecting me to different terms and conditions of employment and pervasive harassment on an almost daily basis. I was also falsely accused of misconduct even though I did my same job that I have been performing for 16 years according to TxDOT policy. I was subjected to disciplinary actions in February and July 2016 based [sic] false or twisted allegations. I complained several times about being treated differently than the other employees. I was then subjected to another false allegation and placed on 12-month probation and five-day suspension without pay on December 16, 2016. TxDOT was made aware that the allegations against me were both false and had been solicited by Clint Traylor from a co-worker by promising the co-worker a transfer. Without any other allegation of misconduct and without any other misconduct by me, I was involuntarily transferred away from Sulphur Springs to a different work location and I was denied a raise or promotion. I was replaced by an employee that was not Native American, was substantially younger than me, and that had not engaged in protected activity.
>
> I believe that I have been discriminated against because of my race Native American or Age or retaliated against because of my protected activities in violation of Title VII of the Civil Rights Act of 1964, as amended or the ADEA.

*Id*. Horne received his Right to Sue letter from the EEOC on March 1, 2019. *See id*. at 30. On June 3, 2019, Plaintiffs filed suit against TxDOT, with Horne asserting claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 1994, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Richards and Carrell asserting claims for retaliation under Title VII. *See* Dkt. 1.

Plaintiffs' Complaint (Dkt. 1) asserts that Horne "is a Native American," and TxDOT discriminated against him based on his race and age. Dkt. 1 at 2. Six months after suit was filed, on December 5, 2019, Plaintiffs filed an Amended Complaint (Dkt. 31), asserting that Horne is "of Native American and Hispanic descent," and TxDOT discriminated against Horne based on these protected traits and his age. Dkt. 31 at 2. Horne did not file a new charge with the EEOC prior to amending his Complaint. On December 20, 2019, TxDOT filed the Motion, arguing that Horne's claim of discrimination based on his Hispanic origin and Plaintiffs' request for attorney's fees based on their retaliation claims should be dismissed. *See* Dkt. 37.

## II.      LEGAL STANDARD

A party may seek dismissal in a pretrial motion based on any defense set out in Rule 12(b) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b); *see also Albany Ins. Co. v. Almacenadora Somex*, 5 F.3d 907, 909 (5th Cir. 1993). Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6). The court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563 n.8.

When considering a motion to dismiss, the court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v.*

*Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III.    ANALYSIS

TxDOT moves for dismissal of Horne's Title VII discrimination claim based on Hispanic origin pursuant to Rule 12(b)(6) because Horne's claim exceeds the scope of his EEOC Charge. *See* Dkt. 37 at 3. Alternatively, TxDOT argues that Horne's claim of discrimination based on Hispanic origin should be dismissed for failure to file suit within ninety days of receiving a right to sue letter. *See id*. at 4. Plaintiffs contend Horne has adequately exhausted his administrative remedies. *See* Dkt. 43 at 3, 6.

### A.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

Title VII generally forbids, in the context of employment, discrimination against any individual due to an individual's race, color, religion, sex, or national origin. *See* 42 U.S.C.A. § 2000e-2(a). Prior to commencing an action in federal court against his employer for violations of Title VII, a plaintiff must exhaust administrative remedies by filing an administrative charge of discrimination with the EEOC within three hundred days of learning of the unlawful conduct. *See Grice v. FMC Technologies Inc.*, 216 F.App'x 401, 405 (5th Cir. 2007). Filing a charge with the EEOC is "a prudential prerequisite to suit." *Davis v. Fort Bend County*, 893 F.3d 300, 305 (5th Cir. 2018); *see Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).

The purpose of the administrative charge requirement is to trigger an investigation, and possible conciliation, by the EEOC. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970). Another "[o]ne of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003) (quoting *EEOC v. Shell Oil Co.*, 446

U.S. 54, 77 (1984)). Only after administrative efforts terminate may an employee sue his employer in federal court. *See Sanchez,* 431 F.2d at 465.

"The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Texas Dept. of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000). The Fifth Circuit has held that "the scope of an EEOC complaint should be construed liberally," and courts are to "look slightly beyond [the EEOC charge's] four corners, to its substance rather than its label." *Pacheco*, 448 F.3d at 788–89. Therefore, a Title VII lawsuit may include allegations that are "like or related to" allegations contained in the EEOC charge or could grow out of such allegations during the pendency of the investigation by the EEOC. *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008); *see Sanchez*, 431 F.2d at 466.  If an asserted claim is not "like or related to" an allegation contained in the EEOC charge, the court must dismiss the claim. *See Taylor,* 296 F.3d at 379 ("Although filing of an EEOC charge is not a jurisdictional prerequisite, it 'is a precondition to filing suit in district court.'") (quoting *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996)).

It is undisputed that Horne did not select "national origin" on his EEOC Charge. *See* Dkt. 1 at 21. Rather, along with age and retaliation, Horne selected "race." *See id.* Moreover, Horne's discrimination statement only mentions his race—Native American—and does not mention or even allude to his Hispanic origin. *See id.*

The fact that Horne did not specifically reference national origin discrimination in his EEOC Charge does not necessarily preclude his national origin-based claim. Horne may have exhausted his administrative remedies on his national origin discrimination claim so long as it is sufficiently related to his race discrimination claim such that it reasonably would have fallen within

the scope of the EEOC investigation into Horne's allegation of race discrimination. *See e.g., Nwoko v. Texas Dept. of Protective and Regulatory Services*, Case No. 3:99-CV-1411, 2000 WL 1006759, at \*5 (N.D. Tex. July 19, 2000); *Hernandez v. City of Corpus Christi*, 820 F.Supp.2d 781, 795 (S.D. Tex. 2011); *Magana v. Tarrant/Dallas Printing, Inc.*, Case No. 3:97-CV-0865D, 1998 WL 548686, at \*2 (N.D. Tex. Aug. 21, 1998). Thus, the Court must determine whether the new allegation that Horne was discriminated against because of his Hispanic origin could reasonably be expected to grow out of his initial charge of Native American-based discrimination. *McClain*, 519 F.3d at 274. In making such determination, the Court must look to whether Horne included sufficient facts in his EEOC Charge to put TxDOT on notice that Horne might have additional allegations of discrimination based on his Hispanic origin. *See Manning*, 332 F.3d at 879; *see also Sanchez*, 431 F.2d at 467 (concluding that the plaintiff could add a claim of national origin discrimination because the facts in her original charge supported such a claim).

In some contexts, "race and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (finding that an allegation of a discriminatory preference for Irish Americans could lead to both race and national origin discrimination claims); *Cf. Benjamin v. New York City Dept. of Health*, 144 F.App'x 140, 142 n.3 (2d Cir. 2005) (finding that an EEOC charge which focused entirely on the plaintiff's dark skin color did not suffice to alert the EEOC to investigate claims of national origin discrimination); *Peeples v. City of Detroit*, 891 F.3d 622, 632–33 (6th Cir. 2018) (finding that a Hispanic plaintiff's claim of national origin discrimination was not "substantially related" to other Black plaintiffs' claims for race discrimination, and thus the Black plaintiffs could not piggyback off of the Hispanic plaintiff's timely filed EEOC charge). Hence, courts will treat a race discrimination claim as a national origin discrimination claim, or

vice versa, when the race and national origin may be correlated. *See Hernandez*, 820 F.Supp.2d at 796. For example, in *Hernandez*, despite the plaintiff only alleging national origin discrimination in her EEOC charge, the court found there was "enough of a relationship between [the plaintiff's] national origin (Mexican) and race (Hispanic)" to conclude that the plaintiff had exhausted her administrative remedies with respect to both claims. *Id*. In *Nwoko v. Texas Dept. of Protective and Regulatory Services*, the court found that, "[a]s a person of Nigerian heritage, [the plaintiff] is likely to be racially grouped or identified with [Black individuals], and therefore her national origin claim can be correlated with her race claim." *Nwoko*, 2000 WL 1006759, at *5.

The Court finds that Horne's allegation of discrimination based on his Hispanic origin could not reasonably be expected to grow out of his EEOC Charge. As stated above, Horne's EEOC Charge focused on his status as "the only Native American" at TxDOT's Sulphur Springs Yard, stating that he was treated differently than everyone else and was replaced by a non-Native American employee. *See* Dkt. 1 at 21. Horne did not mention his Hispanic origin, state that he was the only non-white employee, or allude to any potential claim based on his status as a Hispanic person in his EEOC Charge. *See id*. Moreover, in his response to the Motion, Horne failed to offer any explanation as to how his discrimination claims based on his Hispanic origin and Native American race are sufficiently similar. Rather, Horne merely argues that his Hispanic origin-based discrimination claim meets the "'can reasonably be expected to grow out of the charge of discrimination' equitable standard from the Fifth Circuit's *Sanchez*." Dkt. 43 at 3. This case, however, is distinguishable from *Sanchez*. In *Sanchez*, the Fifth Circuit held that the plaintiff's amended EEOC charge "constituted mere clarification and amplification of the original charge" by spelling out "in greater detail facts tending to demonstrate" the alleged discrimination. *Sanchez*, 431 F.2d at 465. Further, the plaintiff's original EEOC charge in *Sanchez* stated that his boss "hit

[him] in [his] rear" and didn't pay him when he hurt his thumb at work and was out of work for a week. *Id*. at 458. By contrast, Horne specifically stated in his EEOC Charge that he was "the only Native American," he was treated differently than everyone else, and he was replaced by a non-Native American. Dkt. 1 at 21. More recent Fifth Circuit precedent is applicable to this case. In *Kebiro v. Walmart*, the Fifth Circuit held that the plaintiff, a Black male from Kenya, failed to exhaust his claims of discrimination based on his race and gender because his EEOC filings "never mentioned anything but his age, national origin, and prior filings with the EEOC" and the persons who received the positions for which he applied "were only mentioned in terms of their age and their status as non-Kenyans." *Kebiro v. Walmart*, 193 F.App'x 365, 367 (5th Cir. 2006) (per curiam).

Horne also references *Bullard v. Omi Georgia, Inc.*, and *Cisneros v. UTC Providers—Austin, Inc.*, for the proposition that "'national origin' discrimination is so closely related to racial discrimination as to be indistinguishable." *Bullard v. Omi Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981, Unit B). However, as discussed above, the relationship between race and national origin discrimination claims is dependent on the facts of the case.[1] *See Deravin*, 335 F.3d at 201. Here, Plaintiffs have articulated no correlation between Horne's Hispanic origin and Native American race through which the Court could find that an EEOC investigation into his allegation of discrimination based on one could reasonably be expected to grow into an investigation into

---

[1] Further, the facts of *Bullard* are distinguishable from this case. In *Bullard*, the plaintiffs attempted to assert claims under 42 U.S.C. § 1981, alleging they were discharged because of their race and national origin. *See Bullard*, 640 F.2d at 632. The Fifth Circuit held that Section 1981 does not encompass claims based solely on national origin discrimination, but the plaintiffs had properly pled and provided the court enough evidence to support a claim for racial discrimination. *See id*. at 634; *see also Cisneros v. UTC Providers—Austin, Inc.*, Case No. A-17-CV-593-RP, 2018 WL 1702345, at *5 (W.D. Tex. April 6, 2018) (finding that an allegation of discrimination based on speaking Spanish was enough to state a claim for race discrimination under § 1981). As the plaintiffs in *Bullard* were not asserting claims under Title VII, they were not required to file a charge of discrimination with the EEOC. Thus, *Bullard* did not involve a court having to determine whether a claim for national origin discrimination could be asserted when a plaintiff failed to provide the EEOC with any indication of such a claim in his EEOC charge, as is the case here.

discrimination based on the other. Thus, the Court finds that Horne's allegation of discrimination based on his Hispanic origin is not sufficiently related to his allegation of discrimination based on his Native American race, and thus, Horne's Hispanic origin claim of discrimination has not been administratively exhausted.[2] As such, the Court must dismiss Horne's Hispanic origin claim of discrimination.

## B. TIMELINESS OF AMENDED COMPLAINT

Pursuant to Title VII, "a plaintiff has ninety days to bring suit in federal court after receipt of a statutory notice of right to sue from the EEOC." *January v. Texas Dept. of Criminal Justice*, 760 F.App'x 296, 299 (5th Cir. 2019) (citing 42 U.S.C. § 2000e-5(f)(1)). The ninety-day requirement is strictly construed. *See Taylor*, 296 F.3d at 378–79. "This limitations period is, however, subject to the principle of equitable tolling, although this doctrine is 'to be applied sparingly.'" *Burrell v. University of Texas Medical Branch*, Case No. H-09-3932, 2010 WL 1640939, at *2 (S.D. Tex. Apr. 21, 2010) (quoting *Manning*, 332 F.3d at 880). The plaintiff bears the burden to justify equitable tolling. *See Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999). The Fifth Circuit has held equitable tolling to apply in Title VII claims in the following situations: "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights." *Melgar v. T.B. Butler Publishing Company, Inc.*, 931 F.3d 375, 380 (5th Cir. 2019).

Plaintiffs do not argue that Horne's ninety-day deadline to file his Hispanic origin discrimination claim should be equitably tolled, but instead argue that Horne's national origin

---

[2] As stated above, a central purpose of requiring plaintiffs to file charges with the EEOC is to put employers on notice of the nature of the claims against them. *See Manning*, 332 F.3d at 878. During his deposition taken two months prior to Plaintiffs amending their complaint, Horne testified that he was not claiming discrimination based on his Hispanic origin. *See* Dkt. 48-1 at 2.

discrimination claim relates back to the original timely filing date for the case. *See* Dkt. 43 at 5. TxDOT argues the equitable relation back doctrine should not apply to Horne's national origin discrimination claim because Horne has failed to provide a legitimate reason as to why Plaintiffs added this claim nearly six months after the ninety-day deadline passed. *See* Dkt. 48 at 4.

Under Federal Rule of Civil Procedure 15(c), an amended complaint may relate back to the date of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). However, the relation back doctrine does not save Title VII claims not properly exhausted.[3] *See Richardson v. Porter Hedges, LLC*, 22 F.Supp.3d 661, 665–69 (S.D. Tex. 2014) (analyzing only whether the claims that were first brought in the plaintiff's amended complaint and found to have reasonably grown out of the plaintiff's EEOC charge related back to the plaintiff's original complaint). As the Court finds that Horne has not exhausted his administrative remedies for his discrimination claim based on his Hispanic origin, the Court need not decide whether Plaintiffs' Amended Complaint relates back to the date of their timely filed original Complaint.

### C.  ATTORNEY'S FEES FOR RETALIATION CLAIMS

TxDOT moves to dismiss all claims for attorney's fees related to Plaintiffs' mixed motive retaliation claims because the Fifth Circuit does not authorize attorney's fees for such claims under 2000e-5(g)(2)(B)(i). *See* Dkt. 37 at 5. In response, Plaintiffs clarify they are not asserting any retaliation claim under a mixed motive theory, *see* Dkt. 43 at 6, and further argue they are entitled to attorney's fees and costs under 42 U.S.C. § 2000e-5(k) if they prevail on their retaliation claims.

---

[3] The relation back doctrine has been applied to determine whether untimely amendments to charges with the EEOC can relate back to original timely EEOC charges, *see Manning*, 332 F.3d at 878–89; however, Horne did not file an amended EEOC Charge.

*See id.* Thus, in its reply, TxDOT acknowledges that its motion to dismiss attorney's fees may be moot based on Plaintiffs' clarification.

As Plaintiffs are not asserting retaliation claims under a mixed motive theory, the Court finds that TxDOT's motion to dismiss Plaintiffs' request for attorney's fees is **DENIED AS MOOT**.

## IV.    CONCLUSION

Based on the foregoing, the Court finds that TxDOT's Motion (Dkt. 37) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**. Because the Court finds that Plaintiff Horne failed to exhaust his administrative remedies for the discrimination claim based on Horne's Hispanic origin, Defendant's motion to dismiss Horne's claim of national origin discrimination is granted. As the Court finds that Plaintiffs are not asserting claims for retaliation under a mixed motive theory, TxDOT's motion to dismiss Plaintiffs' request for attorney's fees is denied as moot.

**So ORDERED and SIGNED this 29th day of June, 2020.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE